[No. 6206.  Decided July 20, 1906.]

M. H. WHITEHOUSE, *Appellant,* v. ADOLPH NELSON *et al.,*
*Defendants,* G. M. ANNIS, *Respondent.*[1]

FRAUDULENT CONVEYANCES—SALES IN BULK—PARTNERSHIP PROP-
ERTY—CREDITOR OF INDIVIDUAL PARTNER.  A sale by a co-partnership
of its stock in trade without complying with the sales-in-bulk act
is not fraudulent as to the holder of individual notes of one of the
partners, made before the copartnership was formed; since the
holder was not a creditor of such copartnership, and the sales-in-bulk
act only requires a list of the firm creditors.

SAME—WAIVER—ACCEPTANCE OF PART PAYMENT AND SETTLEMENT.
Where a partnership was indebted upon a note, and formed a trading
corporation, to which all the stock in trade was transferred without
complying with the sales-in-bulk act, the holder of the note cannot
claim that the sale was fraudulent as to him, as a creditor of the
partnership, for noncompliance with the sales-in-bulk act, where it
appears that he had accepted from the corporation a guarantee of the
note, and also payments thereon, and after insolvency of the corpor-
ation had compromised his claim with the receiver with the approval
of the court, the settlement being conclusive and the judgment being
*res adjudicata* as to him.

GARNISHMENT—COSTS—ATTORNEY'S FEE OF GARNISHEE.  Bal. Code,
§ 5413, providing for a reasonable attorney's feet for the garnishee
to be taxed with the costs, against the plaintiff or defendant re-
spectively, if discharged on the answer or if the answer was not
controverted, and providing for "costs" to abide the result if the
answer is controverted, entitles the garnishee to recover the attor-
ney's fee and costs in all cases when discharged from liability,
whether on the answer or hearing.

Appeal from a judgment of the superior court for Spokane
county, Huneke, J., entered September 26, 1905, upon find-
ings in favor of a garnishee defendant, after a hearing on
the merits, dismissing a garnishment proceeding.  Affirmed.

*Willis H. Merriam,* for appellant.
*Binkley, Taylor & McLaren,* for respondent.

[1]Reported in 86 Pac. 174.

RUDKIN, J.—For some time prior to the 28th day of August, 1903, the plaintiff, Whitehouse, and one Nelson were copartners doing business in the city of Spokane under the firm name of Whitehouse & Nelson. On the 26th day of May, 1902, Nelson executed his promissory note in favor of Whitehouse for the sum of $201.50, payable ninety days after date; and on the 30th day of March, 1903, two additional promissory notes for the sums of $500 and $75, respectively, the former payable sixty days after date, and the latter ninety days after date. On the 28th day of August, 1903, the copartnership therefore existing between Whitehouse and Nelson was dissolved by mutual consent, and a firm composed of Nelson and one Edwardson, under the firm name and style of the Nelson Dry Goods Company, succeeded to all the property rights and assumed all the indebtedness of the old firm of Whitehouse & Nelson. At the same time and as a part of the same transaction, Nelson and Edwardson and the wife of the latter executed a promissory note in favor of Whitehouse for the sum of $1,400 payable on or before December 1, 1903.

On the 28th day of January, 1904, the Nelson Dry Goods Company, a copartnership, transferred their business, including their entire stock in trade, in bulk, to the Nelson Dry Goods Company, a corporation, of which the above Nelson was the president and principal stockholder, without a compliance with the sales-in-bulk statute, Laws 1901, p. 222. On the 9th day of February, 1904, Whitehouse, with full knowledge of the transfer from the Nelson Dry Goods Company, a copartnership, to the Nelson Dry Goods Company, a corporation, procured from the corporation a written guarantee for the payment of the $1,400 note, and thereafter received from the corporation partial payments thereon aggregating the sum of $847.85.

On the 10th day of August, 1904, the Nelson Dry Goods Company, a corporation, was adjudged insolvent at the suit of French, Finch & Company, and one Annis was appointed

receiver.   The receiver duly qualified, took possession of all the property and assets of the corporation, sold the same under the direction of the court, and caused notice to be given requiring all creditors of the insolvent corporation to present their claims on or before October 12, 1904.   On the 23d day of August, 1904, Whitehouse presented his claim to the receiver for the balance due on the $1,400 note amounting to the sum of $665.13, with interest at ten per cent per annum from July 25, 1904.   The receiver entertained doubts as to the validity of the note, and as to the validity of the guarantee of the insolvent corporation, and rejected the claim. On September 2, 1904, Whitehouse petitioned the court for leave to intervene in the receivership action, set forth in his petition the $1,400 note, the $500 and the $75 notes above described, and asked that the balance due on said several notes be adjudged a first lien on the assets in the hands of the receiver.   The receiver thereupon offered to allow the claim of Whitehouse for the balance due on the $1,400 note, less interest, to share *pro rata,* with the unsecured creditors of the insolvent corporation, provided Whitehouse would waive all further claim against the estate and the receiver on the $500 note and the $75 note.   This offer Whitehouse accepted, the claim was allowed by the receiver, and thereafter approved by the court, and Whitehouse has received from the receiver a dividend of sixty-eight per cent on the amount of the claim as allowed and approved.

On the 11th day of October, 1904, Whitehouse sought to repudiate this settlement and presented his claim to the receiver on the $500 note and the $75 note above described. The receiver refused to allow the claim, and thereupon Whitehouse applied to the court for leave to sue the receiver.   The court made an order on the receiver to show cause why such leave should not be granted.   A hearing was had on the return to the show cause order, the court found that Whitehouse had agreed with the receiver, in consideration of the allowance of the balance due on the $1,400 note, to waive

and renounce any and all claims against the receiver on the $500 note and the $75 note; that said agreement was a just and proper settlement of all matters in dispute between Whitehouse and the receiver, and denied the application for leave to sue. An application for a writ of review to review this order was denied by this court in *State ex rel. Whitehouse v. Superior Court,* 38 Wash. 23, 80 Pac. 195, for the reason that the relator had a remedy by appeal; and in *Whitehouse v. Nelson Dry Goods Co.,* 40 Wash. 189, 82 Pac. 161, an appeal from the order was dismissed for the reason that the order could not be reviewed in the absence of a statement of facts or bill of exceptions.

On the 18th day of April, 1905, Whitehouse recovered a judgment on the several notes herein described, against Nelson and Edwardson jointly in the sum of $363.12, being the balance due on the $1,400 note, and against Nelson alone in the sum of $1,049.41, being the amount due on the three remaining notes. On this judgment a writ of garnishment issued under which it was sought to hold the receiver, because the insolvent corporation had failed to demand of, or receive from, its vendors the statutory affidavit required by the sales-in-bulk statute. The court below found the facts as above set forth, discharged the receiver from all liability, and gave him judgment for his costs, including an attorney's fee of $75. From this judgment Whitehouse appeals.

A mere statement of the facts in this case would seem to afford an all sufficient reason for affirming the judgment. The $201.50 note, the $500 note, and the $75 note were the individual obligations of Adolph Nelson. As holder of such obligations, the appellant was not a creditor of the copartnership of Nelson & Edwardson, and the sale of the partnership property by that partnership was not a fraud on the appellant, even though the sales-in-bulk act was not complied with. In other words, in the sale of partnership property the statutory affidavit need only contain the names, etc., of the

firm creditors, and a sale of such property without complying with the statutory requirements is only void as to the firm creditors.

As to the balance due on the $1,400 note, the appellant clearly waived any rights he might have under the sales-in-bulk act by accepting the guarantee of the corporation, with full knowledge of all the facts, and thereafter receiving payments from the corporation. With the sales-in-bulk act out of the way, there is no pretense that the receiver had in his posession or under his control any property or funds belonging to Nelson. Furthermore, we perceive no reason, legal or moral, why the appellant should not be bound by the agreement voluntarily entered into with the receiver, which the receiver has fully performed, or why the judgment of a court of competent jurisdiction declaring such settlement conclusive should not be res adjudicata as to him.

The appellant further excepted to the allowance of an attorney's fee. Bal. Code, § 5413 (P. C. § 566), provides that,

"Where the garnishee is discharged upon his answer, the costs of the proceeding, including a reasonable compensation to the garnishee for attorney's fees, shall be taxed against the plaintiff; where the answer of the garnishee has not been controverted and the garnishee is held thereon such costs shall be taxed against the defendant and included in the judgment. Where the answer is controverted the cost shall abide the issue of such contest."

The appellant contends that under this section an attorney's fee can only be allowed where the garnishee is discharged upon his answer; that if the answer is controverted, even though the garnishee eventually prevails, he can recover only his statutory costs. In other words, in order to deprive the garnishee of his attorney's fee, it is only necessary for the plaintiff in the principal action to controvert the answer and put the garnishee to further trouble and expense. This contention is so illogical and unreasonable that a court would not adopt it unless the statute admits of no other construc-

tion. We think it was clearly the intention of the legislature that the garnishee should recover his costs and attorney's fees in all cases, when discharged from liability, whether upon the answer or upon the hearing.

There is no error in the record and the judgment is affirmed.

Mount, C. J., Fullerton, Hadley, Root, Crow, and Dunbar, JJ., concur.