[No. 14593. In Bank. — September 30, 1891.]

PACIFIC RAILWAY COMPANY, PETITIONER, v.
W. P. WADE, JUDGE OF THE SUPERIOR COURT OF
LOS ANGELES COUNTY, RESPONDENT.

STREET-RAILWAYS — JOINT USE OF TRACK — MEASURE OF COMPENSATION —
CONSTRUCTION OF CODE. — Section 499 of the Civil Code, permitting two
lines of street-railway, operated under different managements, to use
the same street for a distance of not more than five blocks consecutively,
each paying an equal portion for the construction of the track and ap-
purtenances used by said railways jointly, is controlling as to the amount
of compensation to be given in such case, and must prevail, in reference
to street-railroads, over the general provisions of the code respecting the
assessment of compensation and damages in case of the intersection of
one railroad by another.

ID. — USE OF INSOLVENT COMPANY'S TRACK — RECEIVER — POWER OF COURT
TO DETERMINE COMPENSATION. — A court which, through its receiver,
has the custody and control of an insolvent street-railway company's
property has the power to determine what is the amount of one half of
the cost of the construction of the tracks and appurtenances which would
be occasioned by its track being intersected and used by another street-
railway company.

ID. — EMINENT DOMAIN — PRIVATE PROPERTY — INTEREST IN STREET —
FRANCHISE SUBJECT TO JOINT USE OF TRACK — ESTOPPEL. — There is no
occasion to exercise the right of eminent domain, to determine the amount
of such cost, and there is no private property to be taken for public use.
The street-railway company has no proprietary interest in the street, and
no exclusive right to its use; and its franchise having been taken with the
understanding that another company might be authorized to use the track
jointly with itself as fully as if that condition had been expressly stated
in the grant, it is estopped from claiming that the taking is without its
consent and must be made under the right of eminent domain.

ID. — OBJECT OF FRANCHISE — PUBLIC USE OF STREET — TAKING FOR HIGHER
USE. — A grant of a franchise to a street-railway company is for the pur-
pose of facilitating and not of abridging the public use of the street; and
the granting of a subsequent franchise to another company to connect
with the track of the former company, and use the same in accordance
with the provisions of the statute, is not a taking of the property of the
former company for a higher or different purpose than that to which it
had already been devoted.

ID. — ACTION AGAINST RECEIVER — PETITION — DETERMINING DAMAGE
AGAINST CORPORATION. — While it is, under certain circumstances, proper
to direct the prosecution of an action at law against the receiver of a
street-railway corporation to determine the amount of compensation or
damages against the corporation in favor of one having a claim against it,
yet the better and more commonly recognized practice is to apply for re-
lief by petition to the court in which the receiver is acting; and it is im-
material whether the damage was occasioned prior or subsequent to the
appointment of the receiver.

XCI. CAL.—29

ID. — RECEIVER — FUNCTIONS AND POWERS — CUSTODIA LEGIS — PERMIS-
SION OF COURT. — The property of a street-railway corporation in the
hands of a receiver is *in custodia legis.* His possession is the possession
of the court, for the benefit of all persons interested, and cannot be dis-
turbed by any person without permission of the court. He cannot dis-
pose of the property without the sanction of the court, but with its
permission can do anything the corporation might have done, to make
the most out of the assets in his hands.

ID. — RIGHT OF TRIAL BY JURY — EQUITY JURISDICTION. — The right of trial
by jury, considered as an absolute right, does not extend to cases of
equity jurisdiction; and the question of the liability of a receiver of an
insolvent street-railway corporation properly belongs to the court ap-
pointing the receiver.

WRIT of prohibition to the Superior Court of Los An-
geles County. The facts are stated in the opinion of
the court.

*Houghton, Silent & Campbell,* and *S. C. Hubbell,* for Pe-
titioner.

*John D. Pope, Chapman & Hendrick, Dorn & Dorn, W.
S. Goodfellow,* and *S. C. Denson,* for Respondent.

PATERSON, J. — The Pacific Railway Company is the
owner of a street-railroad operated by means of a wire
cable for the carriage of persons in the city of Los An-
geles. On January 20, 1891, Edward W. Russell com-
menced an action against said company, its stockholders,
and a large number of creditors, alleging, among other
matters, that he was a judgment creditor; that the com-
pany was indebted in large sums to divers persons,
without means or revenue to pay the same, except by the
operation of its railroad system, and the proceeds thereof
were wholly insufficient; that suits had been brought
and many attachment suits would follow, unless steps
be taken to prevent the same, and the operation of the
road would be suspended; that to protect all parties
a receiver was necessary. Wherefore, plaintiff prayed
for the appointment of a receiver to take charge of and
control the property of said company, and if necessary,
to sell the same for the payment of the debts. On the
day the complaint was filed, J. F. Crank was appointed

receiver, with directions to take charge of the street-railways owned by and under the control of the Pacific Railway Company, together with all its real and personal property, and to manage and conduct the business thereof, and, from time to time, render his accounts. Crank qualified and took possession and has ever since continued to operate the road under the order of the court. On January 26, 1891, the Los Angeles Consolidated Electric Railway Company presented to the superior court a petition in said cause, setting forth that the petitioner had entered upon the construction of its line of road, as authorized by certain ordinances, and in the further prosecution of its work it was necessary that it should intersect the tracks of the Pacific Railway Company and run along the same for a distance of three blocks, and praying an order authorizing it to operate over and on said tracks for said distance, and directing the receiver to grant all necessary facilities therefor, and for a further order fixing the amount of compensation which petitioner should pay for the right to use the tracks as aforesaid. At the time fixed for hearing, the petitioners herein appeared, and objected to any proceedings being taken, on the ground that the court had no authority to grant the relief asked. The court overruled the objection, and decided that it had jurisdiction to determine the amount of damages which would be occasioned by making the connections referred to in the petition, and continued the matter for hearing to July 16, 1891. Thereupon petitioners applied to this court for an alternative writ of prohibition, which was granted. In response to the order to show cause why he should not be restrained from any further proceedings in said matter, the judge filed an answer admitting the facts stated, and alleging that the order appointing the receiver was made on motion of the plaintiff in the action, and with the consent of the defendants therein; that on February 13, 1891, the plaintiff Russell filed a petition setting forth that there was some doubt whether the order appointing the receiver was sufficient of itself to vest in him the title to

the property, especially the real property, so as to enable him to exercise all the powers and perform all the duties which the exigencies of the case might require, and asking for an order directing the Pacific Railway Company to assign its property to the receiver; that the order was made as prayed for, with the consent of the Pacific Railway Company.

Section 499 of the Civil Code provides that "two lines of street-railway, operated under different managements, may be permitted to use the same street, each paying an equal portion for the construction of the track and appurtenances used by said railways jointly; but in no case must two lines of street-railway, operated under different managements, occupy and use the same street or tracks for a distance of more than five blocks consecutively."

The petitioner contends that as the ordinances granting the franchises do not provide how compensation shall be ascertained, the electric company must proceed under the provisions of subdivision 6 of section 465, Civil Code. That section is a part of the chapter on the enumeration of the powers of every railroad corporation, and provides that "every corporation whose railroad is, or shall be hereafter, intersected by any new railroad shall unite with the owners of such new railroad in forming such intersections and connections, and grant facilities therefor; and if the two corporations cannot agree upon the amount of compensation to be made therefor, or the points or the manner of such crossings, intersections, and connections, the same shall be ascertained and determined as is provided in title VII., part III., Code of Civil Procedure." But title VII., part III., prescribes rules for the assessment of compensation and damages (Code Civ. Proc., sec. 1248) inconsistent with the measure of compensation established by section 499 of the Civil Code, and the latter must control, as it relates particularly to street-railroads. What counsel for the petitioner means to claim, doubtless, is, that the procedure prescribed by title VII. must be followed; that there

must be an effort to agree with the cable company as to the amount to be paid, and upon disagreement, an action against the receiver in the manner and form required by the title on eminent domain, including a trial by jury, if the defendant insist upon it.

The question to be determined is, simply, whether the court, which, through its receiver, has the custody and control of the insolvent corporation's property, has the power to determine the compensation, viz., one half of the cost of the construction of the tracks and appurtenances used by the companies jointly, or whether the electric company must treat with the cable company, and upon failure to agree as to the amount to be paid, bring an action therefor against the receiver with the permission of the court.

None of the elements of an ordinary condemnation proceeding is involved in the litigation; there is no private property to be taken for public use, — no occasion to exercise the right of eminent domain. The cable company did not acquire by the grant of its franchise any proprietary interest in the street. There can be no private property in a street, except the fee of the owner, which is held subject to the easement as long as the public continue to use the street as a highway. "The maintenance of horse-railroads and running of cars upon the public streets of the city of San Francisco, designed for the carriage of passengers, is a mere special mode of using the highway, nothing more. The right to maintain such a railroad does not exclude the public from the use of the street." (*Market St. R. R. Co.* v. *Central R'y Co.*, 51 Cal. 586.) The franchise of the cable company gave it no exclusive use of that portion of the street upon which its road was constructed. It gave to the company the right to construct its road in such a place and manner as not to interfere with the use of the street by the public. The material placed in the street, it is true, is still the property of the cable company; but it was placed where it is with full knowledge on the part of the company that the latter would have no exclusive

right to its use so long as it should remain in the street. The right of the public to drive vehicles over and upon its road, and the right of the mayor and council to grant to another street-car company a franchise to connect with its track, and to use the same for a distance not exceeding five blocks, entered into its contract with the city as fully, under the provisions of section 499 of the Civil Code then in force, as if the condition had been expressly stated in the grant; and as the cable company took its franchise with the understanding — in effect an express stipulation — that any other company authorized by the mayor and council might use the track jointly with itself, it cannot now be heard to say that such a taking is without its consent, and is a taking of private property for public use, which can be done only by proceedings under the statute relating to eminent domain. The grant to the cable company was made to facilitate, not to abridge, the public use of the street; and the subsequent franchise having been granted to the electric company in accordance with the provisions of the statute, it cannot be said to be a taking of the property of the cable company for any higher or different purpose than that to which it had already been devoted. (Civ. Code, secs. 497–499; *Omnibus R'y Co.* v. *Baldwin*, 57 Cal. 178; *Jersey City and Hoboken R'y Co.* v. *R'y Co.*, 21 N. J. Eq. 556; *Kinsman St. R'y Co.* v. *R'y Co.*, 36 Ohio St. 239; *Sixth Ave. R'y Co.* v. *Kerr*, 45 Barb. 138; *People* v. *Kerr*, 37 Barb. 357; *Chicago & W. I. Co.* v. *Dunbar*, 100 Ill. 138; *St. L. R'y Co.* v. *Cable Co.*, 15 S. W. Rep. 1013; *St. L. R'y Co.* v. *S. R'y Co.*, 16 S. W. Rep. 960.)

If it be true that the grant of the franchise to the electric company gave to it an absolute right, under the statute (Civ. Code, sec. 499) to use the tracks of the cable company upon payment of one half of the cost of construction of the tracks and appurtenances used jointly by the companies, and that there is no question as to the right of eminent domain involved in the matter before us, the question whether the respondent has the right to fix the amount of damages or compensa-

tion to be paid by the electric company is a simple
one.   The property of the cable company is *in cus-
todia legis.*   The receiver is indifferent between the
parties.   His possession is the possession of the court,
for the benefit of all persons interested, whether named
as parties in the action or not, and it cannot be disturbed
without the consent of the court.   No one claiming a
right paramount to that of the receiver can assert it in
any action without the permission of the court.   No sale
can take place, no debt can be paid, no contract can be
made, which does not receive the sanction of the court.
The receiver, with permission of the court, can do any-
thing the corporation might have done to make the most
out of the assets in his hands; it has been held that in
a proper case he may settle disputed claims, and com-
promise with debtors of the corporation; he may lease
other lines of railways, and operate them; he may com-
plete the construction of unfinished lines of railroad,
and negotiate loans for the payment of the cost thereof;
he may enter into contracts by the terms of which the
owners of other roads may use the road under his con-
trol at given rates; and he may charge the rates agreed
upon prior to his appointment, between the company he
represents and another railroad corporation.   (Code Civ.
Proc., sec. 568; Beach on Receivers, secs. 268, 335, 360,
406; Gluck and Becker on Receivers, 106, 107, 131,
140, 241; *In re N. J. & N. Y. R'y Co.*, 29 N. J. Eq. 67;
*Wiswall* v. *Sampson*, 14 How. 65; *Gilbert* v. *R'y Co.*, 33
Gratt. 586.)

In the case before us, the electric company has the
right, under the statute and its franchise, to use the
tracks of the cable company upon payment of one half
of the cost of the construction thereof.   The only ques-
tion to be determined is, What is the amount due the
cable company?   It is like any other claim for damages
or compensation in favor of a corporation whose prop-
erty is in the hands of a receiver, and is to be determined
in the same way.   As to the manner of determining
such question, there has been some discordance of opin-

ion among judges, but so far as we have investigated the subject, there has been no conflict of decision; the cases all hold that while it is, under certain circumstances, proper to direct the prosecution of an action at law against the receiver to determine the amount of compensation or damages to be paid, the better and more commonly recognized practice is to apply for relief by petition to the court in which the receiver is acting. The rule applies to all cases of damages to person or property, whether occasioned prior or subsequent to the appointment of the receiver. (*In re Merrill*, 54 Vt. 200; Redfield on Railways, 6th ed., 378, 380; High on Receivers, secs. 139, 255, 256; Mills on Eminent Domain, sec. 75; *Olyphant* v. *St. L. O. & S. Co.*, 28 Fed. Rep. 729; *Central Trust Co.* v. *R'y Co.*, 28 Fed. Rep. 871.) Any party deeming himself aggrieved by the judgment of the court has the right of appeal. (*First Nat. Bank* v. *Barnum Wire Works*, 58 Mich. 315; *Porter* v. *Kingman*, 126 Mass. 141.)

It is claimed by petitioner that this view of the case deprives it of the right to have the question of compensation determined by a jury, — a right which is guaranteed to it by the constitution (art. I., sec. 14); but as it is not a case involving the exercise of the right of eminent domain, is not a taking of private property for public use, the contention is without merit. In *Barton* v. *Barbour*, 104 U. S. 126, the court, speaking to a similar objection, said: "The argument is much pressed, that by leaving all questions relating to the liability of receivers in the hands of the court appointing them, persons having claims against the insolvent corporation or the receiver will be deprived of a trial by jury. This, it is said, is depriving the party of a constitutional right. . . . . But those who use this argument lose sight of the fundamental principle that the right of trial by jury, considered as an absolute right, does not extend to cases of equity jurisdiction. If it be conceded or clearly shown that a case belongs to this class, the trial of questions involved in it belongs to the court itself, no matter

what may be its importance or complexity. . . . . The new and changed condition of things which is presented by the insolvency of such a corporation as a railroad company has rendered necessary the exercise of large and modified forms of control over its property by the courts charged with the settlement of its affairs and the disposition of its assets." (See also *Joy* v. *City of St. Louis,* 138 U. S. 1.)

It is unnecessary, in view of what has been said, to consider the questions raised by respondent, — whether prohibition is the proper remedy, and whether the petitioner is competent to invoke it.

The question as to whether the East and West Los Angeles Railroad Company sold or leased its tracks on Washington Street to the petitioner is a matter to be considered by the superior court on the hearing of the petition, and is not the subject of inquiry in this proceeding. (*Bishop* v. *Superior Court,* 87 Cal. 233.) The respondent declares in his answer filed herein that "neither the said court nor the judge thereof ruled or intimated that he had any power to fix the compensation or authorize the connection with any railway tracks not belonging to the Pacific Railway Company, or any property not in the custody and control of the court."

The application is denied, and the alternative writ is discharged.

DE HAVEN, J., SHARPSTEIN, J., HARRISON, J., and GAROUTTE, J., concurred.

Rehearing denied.